UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Christian and Shirley Bebensee, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Sony Corporation of America and Sony Electronics, Inc.,

Defendants.

Civil No. 00-932 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Daniel Hedlund, Esq., and Stacey Mills, Esq., Heins Mills & Olson, 700 Northstar East, 608 Second Avenue South, Minneapolis, MN 55402, appeared on behalf of Plaintiffs.

Robert Schwartzbauer, Esq., Dorsey & Whitney, Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, and Michael Williams, Esq., Heller Ehrman White & McAuliffe, 601 Figueroa Street West, Fortieth Floor, Los Angeles, CA 90017-5758, appeared on behalf of Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on February 16, 2001, pursuant to Plaintiffs' Motion for Class Certification. In the Complaint, Plaintiffs allege that Defendants violated the Uniform Commercial Code ("U.C.C.") and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(5)(A), as well as breached express and implied warranties, when Defendants sold Plaintiffs personal computers containing allegedly defective floppy diskette controllers ("FDCs"). For the reasons set forth below, Plaintiffs' motion is denied.

JUN 26 2001
FILED
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Background

Named Plaintiffs Michael Christian and Shirley Bebensee both purchased personal computers manufactured by Defendants (collectively, "Sony"). These personal computers contain floppy diskette drives ("FDDs") which are controlled by FDCs. The FDCs facilitate the transfer of programs, information, code, and commands from the computers' hard drives to floppy disks inserted in the FDDs and back again. Plaintiffs allege that the FDCs contained in their computers possess a defect in design which causes them, under certain relatively rare circumstances, to overwrite individual pieces of electronic information and thereby cause corruption to the programs, information, code, or commands being transferred. The computer does not signal the computer user when an error occurs; rather, the computer user believes that the data or program has been accurately transferred and proceeds without knowing of the problem.

Plaintiffs brought this action alleging that Sony knew of the defect in the FDCs and yet failed to notify consumers of the problem. They seek only compensation for the loss of value to their computer systems caused by the defect; they do not seek consequential damages for the loss of data or programs actually caused by the manifestation of the defect.

Plaintiffs seek to certify the following class:

> All owners or lessees of a computer or computer component designed, manufactured, distributed, sold, or transmitted by Sony Corporation of America or Sony Electronics, Inc., which contains a Floppy Disk Controller ("FDC"), or chip in its FDC, which FDC or chip was produced or manufactured or supplied by Winbond Electronics Corporation, Silicon Integrated Systems Corporation, and/or Integrated Technology Express, Inc. Excluded from the proposed class are the Defendants and their subsidiaries, affiliates, legal representatives, heirs, successors, and assignees.

**Discussion**

In determining the propriety of class action certification, the question is not whether the plaintiffs have stated a cause of action or will ultimately prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Rule 23(a) of the Federal Rules of Civil Procedure sets forth the threshold requirements for certification of a class. Class certification is appropriate when:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Pro. 23(a).

In addition to the threshold requirements of Rule 23(a), a class action is only appropriate if one of the circumstances set forth in Rule 23(b) is also present. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires the Court to find: (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . ." and (2) that the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615. Class actions certified under this provision involve claims for damages and the opportunity for class members to opt out of being bound by the ultimate judgment. *Amchem*, 521 U.S. at 614-15.

The party seeking class certification bears the burden of establishing each prerequisite element to certification. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

Plaintiffs have alleged causes of action based upon Article 2 of the U.C.C. and propose certification of a nation-wide class to resolve those claims. However, as Defendants point out, the U.C.C. is far from uniform. Defendants identify at least two issues relevant to this case on which there is interstate variation.

Plaintiffs first suggest that the variation in laws is insignificant and has no practical implication for the core issues of the lawsuit. The variations may be slight, but they may still be of significance. *See In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 184 (1995) (the law may "differ among the states only in nuance, . . . [b]ut nuance can be important"). Moreover, the Plaintiffs bear the burden of establishing uniformity with respect to the relevant law; they may not simply rest on the bald assertion that the U.C.C. is generally the same from state to state.

Plaintiffs then suggest that any variation in laws may be addressed through the appropriate use of subclasses. For example, Defendants note that the states differ with respect to the requirement of privity for assertion of claims of breach of warranty. Plaintiffs suggest that the majority of states have abandoned the requirement, a minority still have the requirement, and a small handful of states have not resolved the issue with any degree of clarity. Thus, Plaintiffs argue, three subclasses–a thoroughly manageable number–would address the variation. This argument fails for two reasons. First, Plaintiffs suggest that the Court could define a single subclass for class-members in states which have not resolved the privity issue with clarity. That suggestion ignores the Court's obligation to look at each state individually to determine in which direction the state is leaning and how the state courts have generally applied the rule. Second, and more significantly, the privity issue is not the only point of variation among the states; taking into consideration the various combinations of variations, the actual number of subclasses would

be exponentially more than three. Defendants have only noted two points of variation among the states, but the Plaintiffs–who bear the burden–have not established that these two points of variation are the only ones.

Finally, Plaintiffs suggest that California law should govern the claims of all of the plaintiffs, regardless of their home state. Choice of law, in this instance, is a thorny issue.[1]

Generally, a federal court sitting in diversity–or entertaining state law claims–will apply the choice of law principles of the state in which it sits. *See, e.g., Honeywell, Inc. v Ruby Tuesday, Inc.*, 43 F. Supp. 2d 1074, 1077 (D. Minn. 1999). In Minnesota, choice of law is typically dictated by a five part analysis articulated in *Milkovich v. Saari*, 203 N.W.2d 408 (Minn. 1973). However, the U.C.C. has its own choice of law provision which states that, absent a contractual agreement on choice of law, the forum should apply the U.C.C. as enacted by the forum state if the transactions bear an "appropriate relation" to the forum state. U.C.C. § 1-105; Minn. Stat. § 336.1-105.

Different states have defined the term "appropriate relation" differently. *See Hawkland U.C.C. Series* § 1-105:4 (Article 1). Apparently, no Minnesota court has expressly discussed the "appropriate relation" test; however, it is clear from the language of the statute that Minnesota law should apply unless the transaction fails to bear an appropriate relation to Minnesota. Minn. Stat. § 336.1-105(1) ("Failing [an agreement establishing choice of law] this chapter applies to transactions bearing an appropriate relation to this state."). Certainly with respect to named

---

[1] Some of the proposed class members, though neither of the named Plaintiffs, bought their computers directly from Sony and are subject to the contractual choice of law provision found in Sony's sales contract. That contract indicates that the sales are governed by California law. The named Plaintiffs, however, bought their computers from a mail-order retailer in Tennessee.

Plaintiffs, the transactions at issue bear an appropriate relation to Minnesota: Plaintiffs ordered the computers while living in Minnesota, and the computers were shipped to Minnesota. The same cannot be said, however, of potential class members living in other states.

The Court is left, then, with a situation where the laws of different states will likely apply to different members of the proposed class. Although it is possible that the interstate variations in law will be insignificant or can be readily managed through the creation of a few subclasses, Plaintiffs have not met their burden of establishing that common issues predominate. In light of this situation, the Court has several options. First, the Court could certify a partial class of Minnesota consumers only. *See, e.g., Marcello v. Regan*, 574 F. Supp. 586, 591-592 (D.R.I. 1983) (courts may define necessary subclasses or partial classes, pursuant to F.R.C.P. 23(c)(4), and it may do so *sua sponte*). Second, the Court could certify a partial class with respect to the federal claim (under the Computer Fraud and Abuse Act) only. Or, finally, the Court could simply decline, provisionally, to certify the class at all.

The first option, certifying a Minnesota class, is untenable on the record before the Court. Even the Defendants do not contest the numerosity of the proposed nation-wide class; such a class would certainly number in the hundreds, if not thousands. However, the Court has absolutely no information about the possible size of a Minnesota-consumer class. Without any indication at all that a Minnesota-only class would be so numerous as to render joinder impracticable, the Court cannot certify such a class.

The second option, certifying a partial class with respect to the federal statutory claim only, is equally untenable, but for a different reason. It would appear to the Court that resolution of the Consumer Fraud and Abuse Act claims and the U.C.C. claims will involve resolution of overlapping factual issues such as, for example, the key factual question of whether the FDCs

are, in fact, defective in some way. Given this overlap between claims potentially amenable to class resolution and those which, as described above, are not, the Court is loathe to bifurcate the claims to create a partial class because of the potential Seventh Amendment implications. *See, e.g., In the Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d at 1302-1303. The exact scope of this particular problem has not been explored by the parties. It may be that bifurcation of the U.C.C. and CFAA claims is entirely constitutionally permissible. However, even the specter of this constitutional conundrum renders the Court unwilling to engage in bifurcation *sua sponte*.

The Court, then, is inclined to deny, provisionally at least, Plaintiffs' motion for class certification. At present, the Plaintiffs have not met their burden of demonstrating that the variations between the states with respect to the U.C.C. are either insignificant or easily managed through creation of subclasses. Plaintiffs suggests that the Court simply gloss over the potentially fatal class management problems and conditionally grant certification. This is not a proper approach for the Court to take.

> Conditional certification is not a means whereby the District Court can avoid deciding whether, at that time, the requirements of the Rule [23] have been substantially met. The purpose of conditional certification is to preserve the Court's power to revoke certification in those cases wherein the magnitude or complexity of the litigation may eventually reveal problems not theretofore apparent.

*In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974). At present, the Plaintiffs have not met their burden, and the Court will not certify the class.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Class Certification (Doc. No. 19) is **DENIED**.

Dated: June 26, 2001

DONOVAN W. FRANK
Judge of United States District Court