**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Michael Christian and Shirley Bebensee, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Sony Corporation of America and Sony Electronics, Inc.,

Defendants.

Civil No. 00-932 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Daniel Hedlund, Esq., and Stacey Mills, Esq., Heins Mills & Olson, 700 Northstar East, 608 Second Avenue South, Minneapolis, MN 55402, appeared on behalf of Plaintiffs.

Robert Schwartzbauer, Esq., Dorsey & Whitney, Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, and Michael Williams, Esq., Heller Ehrman White & McAuliffe, 601 Figueroa Street West, Fortieth Floor, Los Angeles, CA 90017-5758, appeared on behalf of Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 4, 2001, pursuant to Defendants' Motion for Summary Judgment. In the Complaint, Plaintiffs allege that Defendants violated the Uniform Commercial Code ("U.C.C.") and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(5)(A), as well as breached express and implied warranties, when Defendants sold Plaintiffs personal computers containing allegedly defective floppy diskette controllers ("FDCs"). For the reasons set forth below, Defendants' motion is granted.

FILED JUL 06 2001
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED JUL 06 2001
DEPUTY CLERK'S INITIALS

## Background

Named Plaintiffs Michael Christian and Shirley Bebensee both purchased personal computers manufactured by Defendants (collectively, "Sony"). These personal computers contain floppy diskette drives ("FDDs") which are controlled by FDCs. The FDCs facilitate the transfer of programs, information, code, and commands from the computers' hard drives to floppy disks inserted in the FDDs and back again. Plaintiffs allege that the FDCs contained in their computers possess a defect in design which causes them, under certain relatively rare circumstances, to overwrite individual pieces of electronic information and thereby cause corruption to the programs, information, code, or commands being transferred. The computer does not signal the computer user when an error occurs; rather, the computer user believes that the data or program has been accurately transferred and proceeds without knowing of the problem.

Plaintiffs brought this action alleging that Sony knew of the defect in the FDCs and yet failed to notify consumers of the problem. They seek only compensation for the loss of value to their computer systems caused by the defect; they do not seek consequential damages for the loss of data or programs actually caused by the manifestation of the defect. Indeed, neither Mr. Christian nor Ms. Bebensee have alleged any actual loss of or impairment to data or programs as a result of the alleged defect. Neither Mr. Christian nor Ms. Bebensee ever notified Sony or their retailer about the alleged defect or otherwise attempted to make a claim under the warranty provision of their sales agreement.

In an earlier motion, the Plaintiffs sought to certify a nationwide class of consumers who purchased allegedly defective Sony computers. In an order dated June 26, 2001, this Court

denied the motion for class certification. The matter is now before the Court on Defendants' motion for summary judgment of all claims.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Computer Fraud and Abuse Act**

The CFAA makes it unlawful to "knowingly cause[] the transmission of a program, information, code or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer." 18 U.S.C. 1030(a)(5)(A). Plaintiffs have alleged "damage" defined as "any impairment to the integrity or availability of data, a program, a system, or information, that . . . (A) causes loss aggregating at least $5,000 in value during any 1-year period to one or more individuals." 18 U.S.C. § 1030(e)(8). Sony contends that, for a variety of reasons, Plaintiffs have failed to allege the requisite damage to state a claim under the CFAA.[1] The Court agrees. Specifically, in the absence of a plaintiff class, Plaintiffs have failed to allege damages aggregating at least $5,000. Plaintiffs have claimed damages only for the diminution in value to their computers; even aggregating across both Plaintiffs, the value of the computers at issue totals no more than $4,000. Accordingly, Plaintiffs have failed to state a cognizable claim under the CFAA.

---

[1] Sony alleges additional infirmities with respect to Plaintiffs' CFAA claim, but the Court need not address those arguments because the damages issue is dispositive. However, before determining that the damages issue was dispositive, the Court gave substantial consideration to the arguments of both Plaintiffs and Sony about what Plaintiffs would need to demonstrate to assert a claim under the CFAA. Generally, the Court was persuaded by the Plaintiffs that Sony's actions could, theoretically, be actionable under the CFAA. For example, Sony's argument that the inclusion of a defective FDC–one which causes corruption of data–in a computer, which was then distributed to individual consumers, does not constitute a "transmission" within the meaning of the CFAA is not persuasive. For the Court, the most troubling aspect of Plaintiffs' burden is the need to demonstrate intent. Given that the CFAA is, first and foremost, a criminal statute, it would appear that Plaintiffs bear the burden of proving that Sony had the intent to distribute the defective code *and* the intent to cause harm through that distribution. At this point, there is not even an allegation in the record that Sony distributed the allegedly defective FDCs with the intent to damage the data or programs of consumers. Of course, in light of the Court's ruling on the damages issue, the Court's mere musings on the more substantive requirements of a civil claim under the CFAA are nothing more than that: musings.

### 3. Uniform Commercial Code Claims

As the Court noted in its order denying class certification, the U.C.C. claims of the named Plaintiffs are governed by Minnesota law. With respect to the U.C.C., the Plaintiffs have brought three claims: (1) breach of express warranty; (2) breach of implied warranty; and (3) revocation of acceptance.

With respect to Plaintiffs' claims for breach of warranty (both express and implied), Sony argues that Plaintiffs have failed to meet the notice requirements of Minn. Stat. § 336.2-607, which states: "(3) Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ." Plaintiffs admit that they did not personally contact either Sony or the retailers from whom they purchased their computers to request warranty service. However, they allege that discovery might uncover evidence that Sony was aware of the defect in the FDCs, either because Sony was made aware of litigation against other computer manufacturers or because other Sony customers complained.

Plaintiffs' argument misses the mark. In discussing the provision of the now-defunct Uniform Sales Act which corresponds to U.C.C. § 2-607, Judge Learned Hand made the following observation:

> The plaintiff replies that the buyer is not required to give notice of what the seller already knows, but this confuses two quite different things. The notice "of the breach" required is not of the facts, which the seller presumable [sic] knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach. The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning.

*American Mfg. Co. v. U.S. Shipping Bd. Emergency Fleet Corp.* 7 F.2d 565, 566 (2dCir. 1925). Indeed, the Minnesota Supreme Court has identified three purposes behind the notice provision

found in Minn. Stat. § 336.2-607: (1) to provide the seller with an opportunity to correct the defect (a particularly compelling purpose where, as here, the sales contract limits the buyer's remedy to repair or replacement); (2) to provide the seller with an opportunity to prepare for negotiation and litigation; and (3) to provide the seller with an opportunity to investigate the claims independently while the merchandise remains in a relatively pristine state. *See Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 5 (Minn. 1992).[2] While general knowledge of problems with a product may serve the last two of these purposes, the first purpose may only really be served if the seller is aware of a defect in the produce and that a particular seller wishes to have that defect addressed. *See also Truesdale v. Friedman*, 132 N.W.2d 854, 856 (Minn. 1965) ("The notice must be more than a mere complaint. It must inform the seller that the buyer claims a breach of some warranty and must apprise the seller that the buyer intends to claim damages therefor.").

Based upon the admissions of the Plaintiffs, neither Mr. Christian nor Ms. Bebensee gave notice of any sort that they intended to assert a warranty claim. Accordingly, they failed to meet the legal prerequisites of Minn. Stat. § 336.2-607, and they cannot now bring a breach of warranty claim. Plaintiffs allege that this motion for summary judgment is premature because

---

[2] The Court notes that, in the *WatPro* case, the Minnesota Supreme Court found that a remote manufacturer could be accountable for breach of warranty even though the buyer failed to directly notify the remote manufacturer of the product defect. Specifically, the court stated that "[w]here the record discloses prior knowledge of similar complaints, the defendant will already have investigated the possible causes and therefore cannot argue that it is prejudiced by any delay in receiving notice of the specific complaint." 491 N.W.2d at 5. However, the Minnesota Supreme Court went on to note that the remote manufacturer had general knowledge of the defect because of similar complaints by other purchasers and knowledge, through notice to the manufacturer's agent, of the plaintiff's specific complaints. Here, Plaintiffs did not provide specific notice of their complaints to anyone, either the retailer, the manufacturer, or any agent of the manufacturer.

they have not had an opportunity to discover what Sony actually knew about the alleged defect; as discussed above, no evidence of what Sony actually knew can change the fact that Plaintiffs failed to provide notice to Sony–or to anyone else–that they intended to assert their rights under the warranty. As a result, summary judgment is not premature.

With respect to Plaintiffs' claim for revocation of acceptance, Sony argues that a claim for revocation of acceptance may only be asserted against a seller in privity with the buyer–not against a remote manufacturer. While Sony's rationale for this argument is sound,[3] Sony does not accurately state the law as it is apparently interpreted by Minnesota courts. *See Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 357 (Minn. 1977) (allowing a claim for revocation of acceptance against a remote manufacturer where the retailer was no longer solvent).

However, as Sony further notes, the sales contract at issue here includes a "repair-and-replacement" clause limiting available remedies; such provisions are authorized by Minn. Stat. § 336.2-719. A limitation of remedies will only be put aside if the "exclusive or limited remedy . . . fail[s] of its essential purpose." Minn. Stat. § 336.2-719(2). If–and only if–the exclusive remedy fails its essential purpose, the buyer may seek other remedies, such as revocation of acceptance. Plaintiffs concede that, in the absence of any consequential harm (which would render repair or replacement an insufficient remedy) their claim for revocation of acceptance hinges upon a finding that Sony cannot or will not repair or replace the defective FDCs.

---

[3] As Sony notes, the effect of revocation of acceptance is to nullify the sales contract, theoretically returning the parties to the *status quo ante*. Assuming that the retailer built some profit into the sales price of the Sony computers, allowing revocation of acceptance against Sony results in a windfall to the retailer and puts Sony in the position of refunding the retail price of the computer to the consumers even though Sony itself only received the wholesale price.

Plaintiffs have, themselves, described a "patch" made available by other computer manufacturers to repair the alleged defect. Moreover, the Plaintiffs have not alleged that all FDCs, or even all FDCs used by Sony, have the alleged defect; as a result, Plaintiffs cannot legitimately claim that Sony *cannot* effectively replace the allegedly defective computer component. In addition, Plaintiffs concede that they have never made a claim on the warranty, never requested that Sony remedy the alleged defect. As a result, Plaintiffs have not, and cannot, provide evidence that Sony has refused to remedy the alleged defect.

In the absence of evidence–or even the possibility of evidence–that Sony cannot or will not repair or replace the allegedly defective FDCs, the Plaintiffs are limited by the terms of the sales agreement to the remedies described therein. Plaintiffs are thus precluded from asserting a claim for revocation of acceptance.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. No. 47) is **GRANTED** and the **COMPLAINT** is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 6, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: JUL 06 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995